IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| GREG DOUGLAS, | ) | |
| | ) | |
| Petitioner, | ) | CIVIL ACTION NO.: CV511-027 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | (Case No.: CR507-15) |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Greg Douglas ("Douglas") filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. The Government filed a Motion to Dismiss, to which Douglas responded. The undersigned conducted a hearing on July 26, 2011, at which Douglas and Robert Lee Porter, Jr. ("Porter"), testified. The undersigned appointed James Elliot to represent Douglas. The parties filed post-hearing Briefs.

### STATEMENT OF THE CASE

Douglas was convicted, after a jury trial, of conspiracy to distribute cocaine, methamphetamine, and marijuana, in violation of 21 U.S.C. § 846. Douglas appealed his conviction, and the Eleventh Circuit Court of Appeals affirmed. United States v. Douglas, 385 F. App'x 951 (11th Cir. 2010).

In this Motion, Douglas contends that the Government withheld exculpatory evidence, particularly the telephone records of Elias and Andres Mejia, which would have shown Douglas' innocence. Douglas also contends that his trial attorney was

ineffective by failing to obtain and use these telephone records to establish that Douglas was not involved in the conspiracy and by preventing him from testifying at trial.

The Government asserts that Douglas' challenge to the Government's alleged withholding of exculpatory evidence has been procedurally defaulted. The Government also asserts that Douglas' ineffective assistance of counsel claims are without merit.

## DISCUSSION AND CITATION TO AUTHORITY

### I.  Procedural Default

The Government avers that Douglas' claim that it improperly withheld exculpatory information, specifically, toll records which Douglas contends would have proven that he had no contact with Elias or Andres Mejia, is procedurally defaulted because Douglas did not raise this claim on direct appeal. The Government contends that Douglas does not show that his procedural default of this claim should be excused, and, even if he could, his claim would fail on the merits.

Douglas states that this claim cannot be procedurally defaulted because it was the Government who withheld exculpatory information. Douglas alleges that his claim is based on actual evidence the Government introduced, particularly, the Mejias' phone records, which Special Agent Stephen Tinsley had in his possession. Douglas asserts that the Government had the records from the Mejias' multiple cellular telephones, and these records show all numbers called from or received on these telephones. Douglas contends that the Government's theory was that he had bought drugs from Elias Mejia on previous occasions before he was alleged to have bought drugs from Jesus Neri ("Neri"), and all of the drug transactions were part of a single conspiracy. According to Douglas, the Government withheld these records because these records would have

AO 72A
(Rev. 8/82)

revealed that Neri was lying about Douglas' previous involvement with Elias Mejia and that there was no evidence that Douglas and Elias Mejia had any contact whatsoever.

"Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." McKay v. United States, No. 09-15099, ___ F.3d ___, 2011 WL 4389641, at *4 (11th Cir. Sept. 22, 2011) (internal citation and punctuation omitted). The procedural default rule "'is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments.'" Id. (quoting Massaro v. United States, 538 U.S. 500, 504 (2003)). There are two exceptions to the procedural default rule. A defendant can overcome "application of the procedural default bar by show[ing] cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." Id. (internal citation omitted) (alteration in original). "Under the actual innocence exception—as interpreted by current Supreme Court doctrine—a movant's procedural default is excused if he can show that he is actually innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself." Id. (citing Dretke v. Haley, 541 U.S. 386, 388 (2004)). Because it does not appear that Douglas claims actual innocence[1], the undersigned focuses the discussion on the first of these exceptions—cause and actual prejudice.

---

[1] Douglas seems to contend that he is actually innocent of conspiring with Elias Mejia because he had no direct contact with Elias Mejia. However, the Government's theory of the case did not rest on any alleged direct contact between Douglas and Elias Mejia; therefore, Douglas' seeming actual innocence claim is meritless.

Douglas asserts that he could not raise this issue on appeal because his trial attorney, who was also his appellate counsel, did not raise this issue on appeal. Thus, because his counsel was ineffective for failing to obtain or request this information, Douglas contends, he has "cause" to excuse the procedural default of this claim. Pretermitting a determination as to whether Douglas has shown "cause" to excuse his procedural default on this issue, he also must show "actual prejudice".

Douglas' claim that the Government failed to provide him with exculpatory evidence rests upon Brady v. Maryland, 373 U.S. 83 (1963). In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. A Brady violation is established when a petitioner shows that: "(1) the prosecution possessed evidence favorable to the accused, because it was either exculpatory or impeaching, and did not disclose it to the defense; (2) the State suppressed the evidence such that the defense did not otherwise possess the evidence and could not reasonably have obtained it; and (3) the evidence was material, and its absence yielded prejudice." Gary v. Hall, 558 F.3d 1229, 1255 (11th Cir. 2009). "Evidence is material so as to establish prejudice only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).

The evidence adduced at trial was that, prior to having the pen register activated on Neri's phone, Special Agent Stephen Tinsley ("Tinsley") noted 8 calls between Neri

AO 72A
(Rev. 8/82)

and Douglas. (CR507-15, Doc. No. 406, pp. 17-18). Once the pen register was activated, Tinsley testified there were 63 contacts (the pen register did not record the telephone calls) between Douglas and Neri in a month's time. (Id. at p. 19). Once Tinsley placed a wiretap on Neri's telephone, the contents of the over 400 drug-related telephone conversations were recorded and transcribed. Tinsley identified Douglas as being a participant in 27 of those telephone calls; immediately after Neri and Douglas spoke, Neri spoke with Elias Mejia to arrange to get drugs from Mejia. (Id. at pp. 27-28, 31). Thlando Eugene Paulk, who was a law enforcement officer in Atkinson County, Georgia, identified Douglas' voice on the recordings with "[a] hundred percent[ ]" certainty. (Id. at p. 40). The Sheriff of Atkinson County, who knew Douglas, identified Douglas' voice on the recordings at trial. (Id. at p. 43). Neri testified that he was involved in drug distribution with Elias Mejia, and he identified numerous calls between him and Douglas. (Id. at pp. 66, 75-90). Neri also testified that, when Douglas asked him for three (3) kilos of cocaine, Neri told Douglas that he would have to speak with his friend, who was Elias Mejia. (Id. at pp. 78-79, 81).

The Honorable William T. Moore, Jr., instructed the jury, in general terms, that "a conspiracy is an agreement or a kind of partnership in criminal purposes in which each member becomes the agent or partner of every other member." (CR507-15, Doc. No. 407, p. 13). Judge Moore continued, stating:

> In order to establish a conspiracy offense it is not necessary for the government to prove that all of the people named in the indictment were members of the scheme, or that those who were members had entered into any formal type of agreement. Also, because the essence of a conspiracy offense is the making of the scheme itself, it is not necessary for the government to prove that the conspirators actually succeeded in accomplishing their unlawful plan.

5

What the evidence in the case must show beyond a reasonable doubt is:

FIRST: That two or more persons in some way or manner came to a mutual understanding to try to accomplish a common and unlawful plan as charged in the indictment;

SECOND: That the defendant, knowing the unlawful purpose of the plan, willfully joined in it; and

THIRD: That the object of the unlawful plan was to possess with intent to distribute, and to distribute, more than five kilograms or more of cocaine hydrochloride, 500 grams or more of methamphetamine, and a quantity of marijuana as charged.

A person may become a member of a conspiracy without full knowledge of all of the details of the unlawful scheme or the names and identities of all of the other alleged conspirators. So if a defendant has a general understanding of the unlawful purpose of the plan (including the nature and anticipated weight of the substance involved) and knowingly and willfully joins in that plan on one occasion, that is sufficient to convict that defendant for conspiracy, even though the defendant did not participate before, and even thought the defendant played only a minor part.

(Id. at pp. 13-14).

Based on the evidence at trial, in conjunction with the proper instructions Judge Moore gave to the jury, it would have been immaterial to Douglas' conviction for conspiracy that he never dealt with Mejia directly. Douglas has not shown that these toll records were material or that he was prejudiced by the alleged withholding of this evidence. A reasonable jury could have—and, in fact, did—convict Douglas of conspiracy in the absence of any evidence that Douglas and Elias Mejia had direct contact with each other during the relevant period (which is what Douglas partially asserts), and the jury convicted Douglas of conspiring with Neri. The Government maintained and proved beyond a reasonable doubt that Douglas conspired with Neri and that Neri conspired with Elias Mejia. Douglas did not have to be in direct contact

AO 72A
(Rev. 8/82)

with Elias Mejia for the Government to prove Douglas' participation in the conspiracy. Douglas has failed to show a Brady violation; therefore, Douglas has failed to show actual prejudice so as to excuse his procedural default of this issue.

## II. Ineffective Assistance of Counsel

### A. Failure to Obtain Telephone Records

Douglas contends that Porter was ineffective because he failed to subpoena or request all of Elias Mejia's cellular telephone records for the three (3) years prior to the trial of this case and because he failed to bring the Brady violation to the Court's attention. Douglas avers that, had Porter tried to get these records, the Government's theory of a single conspiracy would have "gone down the drain" and would have prevented Vincent Johnson ("Johnson") from testifying because his testimony would have been inadmissible. (Doc. No. 8, p. 14). Douglas also avers that these records would have served to impeach Neri, who lied about Douglas' prior involvement with Elias Mejia.

The Government responds that Porter cannot be said to have rendered ineffective assistance in failing to obtain this evidence. The Government asserts that Porter "was faced with an insurmountable challenge at trial" to explain why Douglas was not guilty of conspiracy, despite a dozen telephone calls in which Douglas tried to buy cocaine and methamphetamine from a charged co-conspirator. (Doc. No. 5, pp. 18-19). The Government states that this information would have had no effect on the outcome of the trial, and, as a result, Douglas was not prejudiced by Porter's failure to get these records.

AO 72A
(Rev. 8/82)

Criminal defendants have a right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance. Id. at 685-86. The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985). There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. Davis v. United States, 404 F. App'x 336, 338 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).

As noted in Section I, supra, any alleged failure on the part of Porter regarding the toll records did not prejudice Douglas. As to Johnson's testimony, Porter tried to have Johnson's testimony excluded, but Judge Moore permitted Johnson's testimony over Porter's objection. (CR507-15, Doc. No. 406, pp. 47-48). Porter cross-examined Johnson and attempted to impeach him or lessen his credibility with the jury. (Id. at p. 55). In addition, Porter renewed his objection regarding Johnson and his testimony, and Porter also made a motion for acquittal after the close of evidence. (Id. at p. 102). Moreover, Porter also crosses examined Neri. (Id. at p. 93).

The Government notes that, even if these records would have revealed that Douglas did not sell drugs to Johnson during the relevant period, Douglas' conspiracy with Neri was "clearly and overwhelmingly evidenced by the dozen or more recorded conversations [between Douglas and Neri] played to the jury." (Doc. No. 5, p. 21). The undersigned agrees. There is nothing before the Court which indicates that Porter

AO 72A
(Rev. 8/82)

rendered deficient performance in failing to obtain these toll records. Porter attacked Johnson's and Neri's testimony during his cross-examinations of these two (2) men, and he even attempted to have Johnson's testimony excluded in its entirety. Accordingly, Douglas has not met the first prong of Strickland.

### B. Denial of the Right to Testify

Douglas alleges that Neri's testimony at trial was full of inconsistencies and "was suspect at best." (Doc. No. 8, p. 16). Douglas contends that he wanted to testify and tell the jury that: Neri did not sell or deliver any drugs to him in the past; he never contacted Mejia, had gotten drugs from Mejia, or cheated Mejia out of drugs or money; his attempt to buy three kilograms of drugs from Neri was not completed; and Johnson was in rehab at the time of the alleged conspiracy, contrary to what Johnson's testimony was. Douglas maintains that it is of no consequence whether the jury would have believed his testimony, as what is important is that Porter prevented him from exercising his fundamental right to testify on his own behalf. Douglas contends that Porter told him he would not be allowed to testify because the prosecutor was "going to take him apart[ ]" on the stand, but Douglas told Porter he wanted to testify. (Id. at p. 19).

The Government asserts that Douglas' proffered testimony would not have mattered because the jury "heard overwhelming evidence of [Douglas'] participation in the charged drug conspiracy, including, most importantly, over a dozen recorded telephone conversations in which Douglas unmistakably negotiated for the purchase of a large amount of drugs from Neri, one of his alleged co-conspirators." (Doc. No. 5, p. 20). The Government also asserts that evidence that Douglas did not deal directly with Elias Mejia was not important to Douglas' conviction. The Government alleges that

AO 72A
(Rev. 8/82)

Porter thoroughly cross-examined Johnson about the timing of his cocaine purchases and the fact that he wanted leniency on a pending burglary charge in exchange for his testimony, and the jury's verdict would have remained unchanged. According to the Government, even if Douglas did not sell drugs to Johnson during the relevant period, Douglas was still guilty of conspiring with Neri to purchase drugs.

"A criminal defendant has a fundamental right to testify on his own behalf at trial that cannot be waived by counsel." Cleckler v. United States, 410 F. App'x 279, 283 (11th Cir. 2011) (citing United States v. Teague, 953 F.2d 1525, 1532 (11th Cir.1992)). "Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." Id. at 283-84 (internal citation omitted). A defendant's assertion that this right was violated is an assertion of ineffective assistance of counsel. "If counsel deprives his client of the right to testify, his conduct violates the first prong of the Strickland test." Geer v. United States, 354 F. App'x 417, 419 (11th Cir. 2009). "However, a defendant must also satisfy the second prong of Strickland, which requires a showing of prejudice." Id. "To establish prejudice, the defendant must demonstrate that a reasonable probability exists that, but for counsel's ineffectiveness, the result of the case would have been different, and a reasonable probability is a probability that is sufficient to undermine confidence in the conviction." Id.

Douglas testified at the evidentiary hearing that he wanted to testify during his criminal trial, but Porter decided that it would not be in his best interest to do so "because [Porter] felt like the prosecutor would pick me apart for some reason." (Doc.

10

No. 13, p. 9). Douglas also testified that he did not know at the time of his criminal trial that he had the fundamental right to testify. Douglas stated that he was "follow[ing] Porter's] lead[ ]", since Porter told him he did not think it was in Douglas' best interest to testify. (Doc. No. 13, p. 22).

In contrast, Porter testified that he and Douglas talked about what Douglas' story would be if he testified, and Porter recommended that Douglas not testify because he (Porter) did not feel that Douglas' testimony would have helped the defense of the case. Porter testified that he told Douglas he had the right to testify and he could exercise that right, but that he did not recommend Douglas testify. (Id. at pp. 26, 28-29). Douglas "seemed relieved", Porter testified, that he was not going to ask Douglas to take the stand. (Id. at p. 26). Porter declared that he never heard a complaint from Douglas about not testifying until Douglas filed the present Motion.

The undersigned finds the testimony given by Porter at the evidentiary hearing more credible than that given by Douglas. Davis v. United States, 404 F. App'x 336, 338 (11th Cir. 2010) (stating that the determination of the credibility of a testifying attorney during an evidentiary hearing on an ineffective assistance claim is within the province of the district court, which has the opportunity to observe and study the witness). Accordingly, Douglas has not shown that Porter's actions violated the first prong of Strickland. Nor has Douglas shown that Porter's actions violated the second prong of Strickland—that Douglas was prejudiced by Porter's waiver of his fundamental right to testify at trial.

Porter cross-examined both Johnson and Neri, and, as evidenced by the jury's verdict, the jury must have found the testimony of these two (2) men to be credible. In

11

order to establish a successful ineffective assistance of counsel claim in this regard, Douglas must show "that a reasonable probability exists that, but for counsel's ineffectiveness, the result of the case would have been different, and a reasonable probability is a probability that is sufficient to undermine confidence in the conviction." Geer, 354 F. App'x at 419. Douglas is incorrect that it would not have mattered if the jury would have believed his testimony over that offered by Johnson and Neri. Douglas has not shown that, had he testified on his behalf, there is a reasonable probability that the jury would have returned a verdict in his favor. Because Douglas has failed to make this showing, he does not meet the prejudice prong of Strickland.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the Government's Motion to Dismiss be **GRANTED**. It is also my **RECOMMENDATION** that Douglas' Motion to Vacate, Set Aside, or Correct his Sentence, filed pursuant to 28 U.S.C. § 2255, be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 18th day of October, 2011.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE